IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JESSICA J. MCFALL, )
)
Plaintiff, )
)
v. ) Case No. CIV-10-299-FHS
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Jessica J. McFall (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 11, 1976 and was 34 years old at the time of the ALJ's decision. Claimant completed her education through the tenth grade with additional training as a security guard. Claimant has worked in the past as a cashier,

3

cashier/stocker, deli worker, and nurse's aide. None of this work, however, was performed at substantial gainful activity levels. As a result, Claimant has no past relevant work. Claimant alleges an inability to work beginning October 4, 2007 due to limitations resulting from congestive heart failure and heart disease.

**Procedural History**

On March 19, 2008, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On October 23, 2009, an administrative hearing was held before ALJ Lantz McClain in Tulsa, Oklahoma. On March 26, 2009, the ALJ issued an unfavorable decision on Claimant's application. On June 10, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary

work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to properly evaluate the medical opinions of Claimant's treating and examining physicians; and (2) reliance upon the grids to deny benefits was improper.

## Opinions of Claimant's Treating Physician

Claimant asserts the ALJ erroneously failed to fully consider the opinions of his treating physicians, Drs. Satish Kohli and Allreza Damghani and examining physician, Dr. Subramaniam Krishnamurthi. On October 3, 2007, Claimant was admitted to the hospital for childbirth. She was diagnosed with congestive heart failure and pulmonary edema caused by a previously undiagnosed rheumatic heart valve disease. Her treating cardiologist was Dr. Kohli. (Tr. 124-29). Claimant was diagnosed with severe mitral valve regurgitation. (Tr. 128). On May 6, 2008, Claimant continued with severe mitral valve regurgitation. (Tr. 153).

On September 18, 2008, a Physical Residual Functional Capacity Assessment form was completed on Claimant by Dr. J. Marks-Snelling and affirmed by Dr. Lise M. Mungul. Dr. Marks-Snelling opined that Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an

5

8 hour workday, sit for about 6 hours in an 8 hour workday, and engage in unlimited pushing and/or pulling. (Tr. 156). No other limitations were noted.

On September 4, 2008, Claimant again saw Dr. Kohli. Her heart failure condition had resolved and her mitral valve regurgitation was now considered moderate. (Tr. 194). On January 8, 2009, Claimant went to Dr. Kohli complaining of chest pain and shortness of breath. An EKG performed on Claimant was normal. Dr. Kohli diagnosed Claimant with rheumatic heart disease and mild to moderate regurgitation with resolved congestive heart failure. Dr. Kohli ordered a stress test and echocardiogram to assess Claimant's disease. (Tr. 194).

On April 2, 2009, Claimant's condition was assessed by Dr. Kohli, who found Claimant's heart valve disease was mild to moderate, she passed her stress test, her heart failure was under control, and her exercise capacity was fair. Dr. Kohli did not find Claimant's condition was critical. (Tr. 193).

On May 28, 2009, Dr. Kohli noted Claimant was apparently in the hospital with shortness of breath and chest pain. Dr. Kohli diagnosed Claimant with rheumatic heart disease with mild mitral stenosis and regurgitation and congestive heart failure, under control. (Tr. 193).

6

On June 5, 2009, Claimant was attended by Dr. Damghani. Claimant complained of shortness of breath, depression, and anxiety. Claimant responded appropriately and her affect was not flat, although she appeared anxious. (Tr. 205).

In September of 2009, Claimant was seen by both Dr. Kohli and Dr. Damghani. Dr. Kohli noted Claimant experienced occasional non-exertional chest pain and intermittent shortness of breath. Claimant had good exercise capacity some days. Claimant was compensated from a cardiac standpoint. (Tr. 200).

Dr. Damghani diagnosed Claimant with anxiety and depression. He prescribed medication. (Tr. 201).

On October 20, 2009, Dr. Kohli completed a Medical Source Statement, Residual Functional Capacity Cardiac on Claimant. Dr. Kohli noted Claimant's condition caused atypical chest pain, shortness of breath, and fatigue. The symptoms occurred with moderate levels of activity. Dr. Kohli stated Claimant was capable of performing low stress jobs, that her physical condition may produce emotional difficulties such as chronic depression or anxiety, and that she frequently experienced cardiac symptoms severe enough to interfere with attention and concentration. Dr. Kohli estimated Claimant could sit and stand/walk for less than 2 hours in an 8 hour workday. Claimant was also found to require

frequent unscheduled breaks. (Tr. 207). Dr. Kohli stated Claimant could lift and carry 10 pounds for 1/3 of the workday. He also found Claimant would experience good days and bad days and would be absent three times per month or more due to her condition. (Tr. 208).

On October 26, 2009, Dr. Damghani completed a Medical Source Statement of Ability to Do Work Related Activities (Physical). He found Claimant could occasionally and frequently lift/carry 10 pounds. He also determined Claimant could stand/walk at one time about 1-2 hours before sitting or lying down. Dr. Damghani also found Claimant could stand/walk a total of less than 2 hours in an 8 hour workday, could sit at one time for 1-2 hours, and could sit a total of at least 2 hours but less than 6 hours in an 8 hour workday. Dr. Damghani opined Claimant needed to work in a low stress situation and needed to be able to get medical attention if she suffered chest pains or shortness of breath. He estimated Claimant would miss work three times or more per week because of coronary heart disease, depression, and stress. (Tr. 209-10).

On December 14, 2009, Claimant underwent a consultative examination by Dr. Kristamurthi. He found Claimant suffered from moderate rheumatic mitral stenosis and congestive heart failure with mild chest pain and shortness of breath occurring three times

per day. (Tr. 212-14). Dr. Kristamurthi completed a Medical Source Statement of Ability to Do Work Related Activities (Physical) form on Claimant. He limited Claimant to occasionally lifting/carrying 10 pounds, sitting for one hour, standing and walking for 10-30 minutes at one time and sitting for 6 hours, and standing and sitting for one hour each in an 8 hour workday. Dr. Kristamurthi estimated Claimant could reach, push, or pull only occasionally and be exposed to humidity, heat and cold, and exposed to moderate office noise only occasionally. (Tr. 215-20).

In his decision, the ALJ found Claimant suffered from the severe impairments of congestive heart failure and rheumatic mitral disease with mitral stenosis and regurgitation. (Tr. 13). He further found Claimant retained the RFC to perform sedentary work. He determined Claimant could occasionally lift and/or carry 10 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk for at least 2 hours in an 8 hour workday, and sit for at least 6 hours in an 8 hour workday. (Tr. 14).

With regard to the opinion of Dr. Kohli, the ALJ failed to give it controlling weight because "it is in conflict with Dr. Kohli's own treatment records and inconsistent with the other substantial evidence as noted above." (Tr. 17). Similarly, the ALJ refused to give controlling weight to the opinion of Dr.

Damghani, stating "it is in conflict with Dr. Damghani's own treatment records; he has no longitudinal history with the claimant, and his opinion inconsistent with the other substantial evidence as noted above." (Tr. 18). Following the same trend, the ALJ rejected the opinion of Dr. Kristamurthi. He did not give the opinion controlling weight because "he has no longitudinal history with the claimant and his opinion inconsistent with the other substantial evidence as noted above." (Tr. 18). Instead, the ALJ relied upon two medical experts with the State Agency who found Claimant could perform greater than sedentary work activity. Id.

The ALJ is required to give a treating physician's opinion controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

10

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific,

11

legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Essentially, the ALJ determined the medical opinions of Drs. Kohli and Damghani were entitled to no weight. The ALJ cited the Watkins factors when considering each of the physicians' opinions. He then failed to follow Watkins by failing to consider the lesser weight each opinion might be afforded including any restrictions imposed by these physicians. Similarly, the ALJ rejected Dr. Kristamurthi's consultative opinion as it corresponded with the treating physicians' opinions. Indeed, the ALJ appears to have rejected every opinion that contradicted his finding of no disability leaving little for him to rely upon other than his general impression of Claimant's condition in reaching his ultimate conclusion. On remand, the ALJ shall re-evaluate the opinions of these physicians, specifically stating the basis for rejecting their various limitations upon Claimant's ability to work. If he continues to reject giving the opinions of Drs. Kohli and Damghani controlling weight, he shall evaluate whether their opinions and corresponding limitations should be afforded reduced weight and any basis for not doing so.

Claimant also includes an argument that the ALJ failed to adequately consider her mental impairments. The ALJ's treatment of

this condition in his decision is curious, since he appears to recognize some limitation imposed by Claimant's mental impairments but fails to actually recognize the impairments. He should re-examine his treatment of this issue on remand.

### Reliance Upon the Grids

Generally, the grids may not be used conclusively if the claimant has non-exertional limitations, such as mental or postural limitations, that limit her ability from performing a full range of work within a classification. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). When the evaluation reaches step five, application of the grids is not permitted in the absence of vocational testimony unless the Commissioner meets a heightened threshold requirement to justify the substitution of a general rule for particularized vocational testimony. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). In this case, the ALJ failed to engage in this complete analysis in order to rely conclusively upon the grids. On remand, the ALJ shall apply the appropriate standard if application of the grids is maintained.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above

13

and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of July, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE